2017 ND 18

**JB CONSTRUCTION, INC., Petitioner and Appellant**

v.

**JOB SERVICE NORTH DAKOTA, Respondent and Appellee**

No. 20160270

Supreme Court of North Dakota.

Filed 2/16/2017

Michael J. Geiermann, P.O. Box 2196, Bismarck, ND 58502–2196, for petitioner and appellant.

Michael T. Pitcher, Office of the Attorney General, 500 N. Ninth St., Bismarck, ND 58501–4509, for respondent and appellee.

VandeWalle, Chief Justice.

[¶ 1] JB Construction, Inc. appealed the district court's judgment affirming Job Service's "Notice of Determination" stating Jesse Jahner's and Vance Jahner's services constituted employment under N.D.C.C. § 52–01–01(17). On appeal, JB Construction, Inc. argues the plain language of § 52–01–01(17)(a)(1) shows new corporate officers do not need to file for an exemption if an exemption was granted to prior officers and the current officers meet all of the requirements under the statute. Because N.D.C.C. § 52–01–01(17)(a)(1) unambiguously requires corporate officers to file their own application for an exemption, we affirm.

I.

[¶ 2] JB Construction, Inc. ("JB") is an incorporated power-line construction company. In 2000, its corporate officers, Wesley Jahner, Harvey Jahner, and Wayne Jahner, the president, vice-president, and secretary/treasurer, respectively, applied to exempt their wages from job insurance coverage under N.D.C.C. § 52–01–01(17)(a)(1). Job Service approved JB's application. In 2009, Wesley Jahner sold his one-third share of the company to his son, Vance Jahner, who became the secretary/treasurer, and Wayne Jahner sold his one-third share to his son, Jesse Jahner, who became the vice-president; Harvey Jahner retained his one-third share and became president of JB. When the corporate officers of JB changed, JB did not file a new application to exempt Jesse Jahner's and Vance Jahner's wages from job insurance coverage.

[¶ 3] During an audit in 2015, Job Service North Dakota discovered JB was excluding the wages for job insurance coverage for its current corporate officers, yet no application was on file for exempting Vance Jahner's and Jesse Jahner's wages. Job Services determined the services provided by Vance Jahner and Jesse Jahner were employment under N.D.C.C. § 52–01–01(17) and they had not filed the necessary application to exempt their wages. An appeals referee affirmed Job Service's decision. JB appealed to the district court, which again affirmed Job Service's determination.

.

[¶ 4] On appeal, JB argues N.D.C.C. § 52–01–01(17)(a)(1) does not require Jesse Jahner and Vance Jahner to file a new application for an exemption. Rather, the exemption filed in 2000 applies to the corporate officers of JB in general, not as individuals; thus, Jesse Jahner and Vance Jahner are covered by the 2000 exemption.

## II.

 [¶ 5] The issue raised by JB is one of purely statutory interpretation and is fully reviewable by this Court on appeal. Teigen v. State, 2008 ND 88, ¶ 19, 749 N.W.2d 505. However, this Court "will give deference to an administrative agency's construction of a statute in administering the law when that interpretation does not contradict clear and unambiguous statutory language." Indus. Contractors, Inc. v. Workforce Safety & Ins., 2009 ND 157, ¶ 6, 772 N.W.2d 582. This Court's review of statutes is well established:

Words in a statute are given their plain, ordinary, and commonly understood meaning unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, the letter of the statute must not be disregarded under the pretext of pursuing its spirit. N.D.C.C. § 1–02–05. If the language of a statute is ambiguous, however, a court may resort to extrinsic aids to determine the intention of the legislation, including the object sought to be attained, the circumstances under which the legislation was enacted, and the legislative history. N.D.C.C. § 1–02–39. A statute is ambiguous if it is susceptible to different, rational meanings. State v. Meador, 2010 ND 139, ¶ 11, 785 N.W.2d 886.

Rasnic v. ConocoPhillips Co., 2014 ND 181, ¶ 14, 854 N.W.2d 659. Additionally, we construe statutes to give effect to all of the provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1–02–38(2) and (4).

[¶ 6] Under N.D.C.C. § 52–01–01(17)(a)(1), "employment" is defined as:

Any officer of a corporation. If a corporate officer is employed by a corporation in which one-fourth or more of the ownership interest, however designated, is owned or controlled by the officer or by the officer's parent, child, or spouse, or by any combination of them, the corporation with the concurrence of the officer may exclude that officer's service from employment as of the first day of January of any calendar year if, during January of that year, the corporation files a written application to exclude the officer's service from employment[.]

 [¶ 7] On appeal, JB argues the plain language of N.D.C.C. § 52–01–01(17)(a)(1) shows the exemption belongs to the corporation, not to the individual officer. JB contends when Job Service granted the exemption in 2000, it granted the exemption to the positions of president, vice-president, and secretary/treasurer, not to Wayne Jahner, Wesley Jahner, and Harvey Jahner. Conversely, Job Service argues the statute applies to the corporate officer as an individual and when it granted the 2000 exemption to JB, it granted it to Wayne Jahner, Wesley Jahner, and Harvey Jahner as individuals. Essentially, JB argues the statute allows for the exemption to be rolled over to any new officer without having to file a new application for exemption. Whereas, Job Service reads the statute to require a corporation to file a new application if the corporation wants to exempt a new officer.

[¶ 8] We conclude the statute unambiguously applies the exemption to the officer as an individual, not generally to the officer's position. We reach this conclusion based on two separate provisions of the statute: (1) the phrase "the corporation with the concurrence of the officer may exclude that officer's service from employment" (emphasis added), and (2) the procedure officers and the corporation are required to follow in applying for an exemption.

[¶ 9] Section 52–01–01(17)(a)(1), N.D.C.C., includes the phrase "the corporation with the concurrence of the officer may exclude that officer's service from employment[.]" (emphasis added). Webster's defines "that" as "the person ... indicated [or] mentioned." Merriam–Webster's Collegiate Dictionary 1294 (11th ed. 2003). In § 52–01–01(17)(a)(1), "that officer" references back to the officer who concurred with the corporation exempting his service from employment. Thus, when an officer concurs with the exemption, he is agreeing to exempt his services, not the services of future officers who may one day hold the same position. We therefore construe the statute to apply to the officer as an individual rather than to the officer's position.

[¶ 10] The elements required for an exemption also indicate the statute applies to the officer as an individual and not to the officer's position. Under N.D.C.C. § 52–01–01(17)(a)(1), to qualify for the exemption, an officer is required to have at least a quarter interest in the corporation and agree to the corporation's exclusion of his service from employment. If the exemption automatically applied to the next individual who assumed the corporate position, the new officer may not be in compliance with the requirements of the statute.

[¶ 11] Throughout its brief, JB argues the exemption belongs to the corporation, not to the individual officers. It argues "[i]f a corporation, regardless of who the corporate officers may be, can satisfy the three statutory requirements, the exemption to the corporation is available." But this interpretation would essentially negate the requirement that the corporate officer agree to the exemption. Because statutes are to be read to give meaning to each provision, JB's interpretation of the statute is problematic. A corporation, acting alone, cannot qualify for an exemption; the officer's acquiescence is needed. Therefore, we hold that exemptions granted under N.D.C.C. § 52–01–01(17)(a)(1) apply to an officer as an individual and not generally to the officer's position.

### III.

[¶ 12] Although we find N.D.C.C. § 52–01–01(17)(a)(1) to be unambiguous in requiring individual officers to apply for exemptions, we are troubled by the lack of clarity Job Service provides in its letters granting exemptions to corporate officers. Job Service's letter approving JB's application for an exemption states in its entirety:

> Your application to exempt corporate officers, or LLC managers, Wesley Jahner, President; Harvey Jahner, Vice-president; and Wayne Jahner, Secretary/Treasurer, from job insurance coverage is approved.

> This exemption is effective January 1, 2000 and will remain in effect until an application is filed to void the exemption. The exemption does not apply to your fourth quarter report for 1999.

> Please do not include the name, social security number, or wages for exempt corporate officers or exempt LLC managers on future quarterly reports.

The letter does not contain information to alert the corporation or the exempt officers of their responsibilities to file a new

application for an exemption if an officer's ownership interest falls below 25% or, as in this case, when an exempt officer transfers his interest and position to another. Rather, the letter only states the exemption will remain in effect indefinitely until an application to void is filed. However, because the statute is unambiguous, we affirm.

## IV.

[¶ 13] We affirm the district court's judgment affirming Job Service's "Notice of Determination" stating Jesse Jahner's and Vance Jahner's services qualify as employment under N.D.C.C. § 52–01–01(17).

[¶ 14] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Dale V. Sandstrom, S.J.

[¶ 15] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.